UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGINIA ERICSON,

    Plaintiff,                                   Civil Action No. 05-74445

v.                                          HON. GERALD E. ROSEN
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Virginia Ericson brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability and disability insurance benefits under the Social Security Act (Tr. 41-43). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

**PROCEDURAL HISTORY**

On February 4, 2003, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset of disability date of April 1, 2001 (Tr. 41-43). After denial of her

initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on April 12, 2005 in Oak Park, Michigan before Administrative Law Judge (ALJ) Henry Perez. Plaintiff, unrepresented by counsel, testified[1]. (Tr. 167-180). Aca Brown, acting as Vocational Expert (VE), also testified (Tr. 180-185). On July 25, 2005, ALJ Perez found that Plaintiff retained the ability to perform her past relevant work as a data entry clerk, sales representative, and customer service representative (Tr. 19). On September 23, 2005, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on November 22, 2005.

## BACKGROUND FACTS

Plaintiff, born May 28, 1941, was age 64 when the ALJ issued his decision (Tr. 41). She graduated from high school and worked previously as a data entry clerk, sales representative, and customer service representative (Tr. 53, 58). Plaintiff alleges an onset date of April 1, 2001 due to back, hip, and nerve pain (Tr. 52).

### A.     Plaintiff's Testimony

Plaintiff, divorced with three adult children, testified that she was a high school graduate (Tr. 168-169). She stated that she had last worked in April, 2001, reporting that a temporary employment agency assigned her work at a supermarket (Tr. 169). She indicated that she had performed customer service jobs from 1988-1990, 1992-1999, and November, 2000 through February, 2001 (Tr. 170). She added that she had performed data entry work

---

[1] Plaintiff is currently represented by Diane M. Kwitoski.

for Kelly Services between 1990 and 1992 (Tr. 171).

Plaintiff alleged that back and hip injuries sustained in a 1992 car accident prevented her from working, stating that she experienced continuous back and hip pain (171). She testified that six weeks of physical therapy following the accident provided only minimal relief, adding that she presently took Flexeril for pain as well as Neurontin and Naprosyn for right hip problems (Tr. 174-175). Plaintiff rated her pain on a scale of one to ten as a "six" for her back and a "six to eight" for her right hip (Tr. 174-176).

Plaintiff reported that she continued to perform light household chores such as dusting, rinsing dishes, and laundry, but denied vacuuming due to hip and back pain (Tr. 177). She reported visiting with relatives and friends; seeing movies; and going to church on a regular basis (Tr. 178). She estimated that she could sit for up to one hour, stand for half an hour, and walk for a maximum of a quarter of a city block (179). She testified that she was unable to lift more than five pounds (Tr. 180).

### B. Medical Evidence

#### i. Treating Sources

X-Rays of Plaintiff's thoracic and lumbar spine, taken after Plaintiff's February, 1992 automobile accident, showed normal results (Tr. 92). In February, 1997, Nancy K. Juopperi, D.O., examined Plaintiff, noting that she exhibited "some mild gait instability," but that MRI imaging showed normal results (Tr. 135). In November, 1999, an MRI of Plaintiff's brain showed normal results, and an MRI of her right knee showed "[a] tiny benign signal abnormality . . . in the distal femur" and "small, compartmentalized popliteal cyst" (Tr. 94-

95). A CT scan of Plaintiff's right hip showed normal results and an MRI of Plaintiff's cervical spine showed essentially normal results (Tr. 96-97). The next month, Plaintiff was diagnosed with ilioinguinal nerve distribution and underwent a nerve block with steroids (Tr. 115).

In May, 2000, William Kole, M.D., noted that Plaintiff experienced temporary relief from the nerve block which along with a prescription for Neurontin "reduced her pain down to a 1 out of 10," pointing out that Plaintiff had initially reported pain at the seven to nine level (Tr. 108). Deeming Plaintiff's prognosis for "full recovery" poor, he found nonetheless that "her prognosis for reduction in pain with these medications is very good in terms of maintaining her pain level at a 1 out of 10" (Tr. 108).

In March, 2003, Plaintiff reported a poor appetite and difficulty sleeping (Tr. 161). In June, 2003, physician's notes show that Plaintiff continued to take Neurontin and Flexeril for chronic right hip discomfort (Tr. 159). A medication flow sheet from the same month shows that Plaintiff also took Naprosyn and Pamelor (Tr. 152). In November, 2004, Hussein Huraibi, M.D., noted that Plaintiff "appears in good spirits and exhibits no signs of pain behaviors" (Tr. 148). Plaintiff reported a pain level of three "on average" (Tr. 148). February, 2005 examination notes by Huraibi indicate that Plaintiff reported level "four" pain (Tr. 146).

### ii. Consultive Sources

In April, 2003, Anjum Sadiq, M.D., examined Plaintiff on behalf of the SSA (Tr. 139-

140). Sadiq, noting the absence of inflammation in the right hip and 5/5 muscle strength in the lower extremities, found that Plaintiff "was not using an ambulatory aid," opining that "she did not have the need" for an ambulatory device (Tr. 140). Plaintiff demonstrated heel, toe, and tandem walking "without any problems" (Tr. 140).

A Residual Functional Capacity Assessment performed in June, 2003 found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently; the ability to stand, walk, or sit for six hours in an eight-hour workday; and unlimited abilities to push or pull in the upper and lower extremities (Tr. 85). The report noted that although Plaintiff reported constant sharp throbbing pain in her right hip, neither X-rays nor MRI exams performed in 1999 showed abnormalities (Tr. 85). The report found an absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 88).

### C. Vocational Expert Testimony

VE Asa Brown classified Plaintiff's former work as "the top end of semi-skilled" at the sedentary level of exertion (Tr. 181). The ALJ then posed the following question to the VE:

> "Taking claimant's age, education and work experience into account[,] assume that such a person has an exertion limitation of lifting 20 pounds occasionally, 10 pounds frequently and if we put this individual at the semiskilled level could such a person be expected to perform claimant's past relevant work?"

(Tr. 181). The VE stated that given the above limitations, such an individual could perform Plaintiff's past work (Tr. 181). The VE then testified that if all of Plaintiff's alleged limitations were considered, she would be unable to work due to her inability to sit for more

than one hour or stand for only a half hour (Tr. 182).  However, he testified that if Plaintiff was given a sit/stand option, she retained the ability to perform her past relevant work, noting that such an option was generally available in sales jobs (Tr. 182-185).  He testified that his findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT"), noting however that the DOT does not address sit/stand options (Tr. 185).

### D.     The ALJ's Decision

Based on Plaintiff's February 4, 2003 application, ALJ Perez concluded that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 19).  Citing Plaintiff's medical records, he found that Plaintiff experienced "ilioinguinal neuralgia; a history of lumbar laminectomy; nerve inflammation in the right hip; muscle, ligament, and fascia disorder; and, disorders of the back" (Tr. 17). The ALJ determined that these impairments were "severe" based on the requirements of 20 C.F.R. § 404.1521, but found that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4, including sections 5.07 and 12.04 (Tr. 17).

 Finding that Plaintiff retained a Residual Functional Capacity ("RFC") to lift 10 pounds frequently and 20 pounds occasionally (light exertional work), The ALJ concluded that Plaintiff could perform her former sedentary, semi-skilled work as a customer service or sales representative as well as data entry work (Tr. 18).

The ALJ found Plaintiff's subjective complaints of limitations "not totally credible," noting that the medical evidence of record did not support her allegations (Tr. 17, 19).  He found that "medical diagnostic testing, including X-rays, CT scans, MRI's and clinical

findings" did not support her claimed level of limitation (Tr. 18). He noted further that Plaintiff engaged in wide variety of activities including driving, visiting with family and friends, going to church regularly, and caring for herself (18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. A Full and Fair Hearing

Plaintiff argues first that she is entitled to a remand on the basis that the ALJ failed to fully develop the administrative record. *Plaintiff's Brief* at 12. She contends in particular that the ALJ adopted an "argumentative" tone and interrupted her when she attempted to describe her former job's requirements, also pointing out that the entire hearing transcript was only 21 pages. *Id*. at 12-15. She alleges that the ALJ conducted an "adversarial" rather than the "inquisitorial" type of hearing contrary to the requirements set out in *Sims v. Afel,* 530 U.S. 103, 120 S.Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000).

As noted by Plaintiff, *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000) held that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.*  Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir. 1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971).  Further, "where the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings. *Id.; Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981).  However, "the mere fact that a claimant is unrepresented is not grounds for reversal."  *Born v. Secretary of Health & Human Services* 923 F.2d 1168, 1172 (6th Cir. 1990), *citing to Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 856 (6th Cir.1986).

Plaintiff's arguments that the ALJ did not develop an adequate record and conducted an adversarial, rather than investigative hearing fail for a number of reasons. First, I disagree with Plaintiff's argument that a 21-page hearing is intrinsically deficient.  As noted by Defendant, the ALJ questioned Plaintiff about her exertional and non-exertional limitations, her degree of pain, activities of daily living ("ADLs"), and work history (Tr. 167-180).

Plaintiff's related claim that the ALJ exhibited "adversarial" behavior by interrupting her while she described her former job's exertional requirements also fails (Tr. 184).  The

-9-

exchange in question went as follows:

| | |
|---|---|
| VE: | (to Plaintiff) "What did you do to make your salary? You were at the desk doing what?" |
| Plaintiff: | "Inside sales." |
| VE: | "People would come there to you?" |
| Plaintiff: | "No, it was an office job." |
| ALJ: | "The sales, how were you -" |
| Plaintiff: | "Inside sales." |
| ALJ: | "– conducting-" |
| Plaintiff: | "It's sit at a desk, answer the phone. Do that type of thing." |
| VE: | "You can do that." |
| ALJ: | "Nobody cares if you do that standing up or sitting down as long as you're making products, as long as you're making sales." |
| Plaintiff: | "Well, the place I worked for you couldn't sit/stand. You had – you could only sit. It was –" |
| ALJ: | "If that's the case that's an unusual circumstance. The posture to an employer is far less important than getting it done. And if you have to stand to get it done they don't care." |

(Tr. 184-185).

The Court cannot accept Plaintiff's premise that allowing her to describe her former job requirements at greater length would have established that she was incapable of performing past relevant work. At Step Four, the Commissioner considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant. SSR 82-61. If so, the claimant is not disabled. If not, the Commission considers whether the claimant can perform the functional demands and job duties of the occupation *as generally required by employers throughout the national*

*economy*. *Id.*

Although Plaintiff faults the ALJ for interrupting her narrative, and by stating that her work circumstances were "unusual," he was clearly alluding to the fact that he need not establish that she can do her past work "as previously performed" to make a Step Four finding but rather, the job duties "generally required"of her occupation in the national economy.  Further, the VE confirmed that Plaintiff's limitations did not prevent her from doing her past relevant work as generally performed, stating that "I have placed (sic) people in sales jobs such as the one she had and I'm confident that the [sit/stand] option exists" (Tr. 185).   Although Plaintiff also contends that the ALJ's alleged impatience with the pace of her testimony requires remand, this does not establish that he showed impermissible bias or that her due process rights were violated.  *See Liteky v. United States,* 510 U.S. 540, 555-556,  114 S.Ct. 1147, 1157, 127 L.Ed.2d 474(1994) (While evidence of  "deep-seated and unequivocal antagonism . . . would render fair judgment impossible . . . . expressions of impatience, dissatisfaction, annoyance, and even anger . . . are within the bounds of what imperfect men and women ... sometimes display" and do not establish bias).  In the present case, the fact that the ALJ may have exhibited impatience cannot serve as grounds for remand.

### B.  Treating Physician[2]

---

[2] Based on Dr. Kole's 2000 "opinion," Plaintiff also argues that because she was unrepresented, the ALJ had a duty to explore whether her most recent work in March, 2001 should have been considered a failed work attempt which would have allowed her to claim

Next, Plaintiff contends that the ALJ erred by not adopting her treating physician's opinion that she was unable to work. *Plaintiff's Brief* at 16-17.  She argues that the ALJ's failure to analyze Dr. Kole's 2000 statement constitutes reversible error. *Id.*  As a general rule, treating physicians' opinions, "based on objective evidence, should be accorded significant weight.  If uncontradicted, the physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991).  However, in light of the fact that none of Plaintiff's physicians actually opined that she was incapable of employment, the ALJ was not required to conduct such an analysis.  Plaintiff apparently premises this argument on a 2000 statement by her physician that he was "uncertain" as to whether Plaintiff was unable to work, noting that she was "currently not working" (Tr. 132).   That statement alone cannot be deemed a finding of disability.

Even assuming for the sake of argument that the 2000 statement by Dr. Kole could be construed as a disability pronouncement, substantial evidence, including Dr. Kole's own reports, supports the opposite conclusion.  Dr. Kole noted in May, 2000 that her pain had been reduced to the level of "one" on a scale of one to ten (Tr. 108).  Imaging studies performed on Plaintiff's spine and right hip in 1999 showed essentially normal results (Tr. 96, 97).  A consultive exam performed in April, 2003 noted that Plaintiff did not require the use of a cane or walker (Tr. 140).  In February, 2005 Plaintiff reported level "four" pain,

---

disability as early as 1999. *Id.*  Assuming that the district court adopts the undersigned's recommendation that Plaintiff is not disabled, this claim is mooted.

rather than the "six" to "eight" she claimed at her April, 2005 hearing (Tr. 146, 174-176). Accordingly, Plaintiff's "treating physician" argument cannot provide a basis for remand.

### C. Sentence Six Remand

Finally, Plaintiff argues that the ALJ "breached his duty" by failing to attempt to procure medical records dating from 2003 to February, 2005. *Plaintiff's Brief* at 16. These records were produced to the Appeals Council, which considered the newer material, but found that the information did not provide a basis for changing the administrative decision (Tr. 5).

Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to an extremely narrow review by the district court. In *Cotton*, the court held that where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

The Court has reviewed the submissions made to the Appeals Council, found at transcript pages 143-163. Even assuming that the ALJ's failure to procure and consider these records constitutes "good cause" for the late submission, this argument founders on the materials' lack of materiality. If anything, the newer records show that Plaintiff's hip and back pain was better managed than indicated by the earlier records. As discussed above, November, 2004 physician's notes state that she "appear[ed] in good spirits" and reported a pain level of "three" (Tr. 148). In February, 2005 she reported level "four" pain (Tr. 146).

In an abundance of fairness to Plaintiff, the Court is mindful that she has also used the absence of these later files from the administrative record to illustrate the ALJ's lack of diligence in obtaining all relevant information before making his decision to support her argument that she did not receive a "full and fair" hearing. Having read and reread Plaintiff's 2005 hearing testimony that she continued to take medication but had not undergone more aggressive therapy in recent years (as juxtaposed against her 2003 application stating that she was currently receiving pain medication) the record allows for the inference that the ALJ reasonably believed that more recent records (assuming he was aware of their existence) showed that Plaintiff's condition was essentially static. The absence of the newer files from the administrative record does not establish that Plaintiff's due process rights were violated.

Likewise, I reject Plaintiff's argument that internal inconsistencies in the decision

-14-

mandate remand. Plaintiff premises this argument on the fact that the ALJ found the presence of the "severe" impairment of ilioinguinal neuralgia at Step Two of his analysis, yet failed to find that this condition rendered her disabled. This reflects a misunderstanding of the administrative sequence. This Circuit has generally construed the Step Two severity regulation as a *de minimis* hurdle in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Although the finding of the presence of a "severe" impairment at Step Two requires an ALJ to *consider* those limitations in his ultimate Step Four or Five determinations, it does not follow that the mere existence of a severe impairment requires a finding of disability. In the present case, the ALJ did even more than simply considering Plaintiff's severe impairments in his final decision; he actually adopted the VE findings which were based on *Plaintiff's own professed degree of limitation*. (Tr. 181-182).

Although Plaintiff appears to experience some degree of limitation as a result of hip and back pain, as a whole, the record points overwhelmingly to a finding of non-disability. The administrative decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  February 23, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 23, 2007.

S/Gina Wilson
Judicial Assistant